NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANET THOMAS, | : |
|                 Plaintiff, | : Civil Action No. 12-6251 (ES) |
| v. | : |
| COMMISSIONER OF SOCIAL SECURITY, | : OPINION |
|                 Defendant. | : |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Janet Thomas ("Plaintiff" or "Ms. Thomas") seeking review of the Administrative Law Judge's ("ALJ") decision denying Ms. Thomas's application for supplemental social security income disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The Court has considered the submissions in support of and in opposition to the present appeal, in addition to the administrative record, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal.

**I.     Background**

On May 6, 2008, Plaintiff filed an application for supplemental security income disability benefits, alleging disability commencing April 8, 2008. (R. at 12).[1] The application was initially denied on September 8, 2008, and again on Reconsideration on February 23, 2009. (R. at 50, 57). On February 25, 2009, Plaintiff filed a written request for a hearing. (R. at 60). This

---
[1] The Court uses the initial "R." to refer to the Administrative Record.

1

request was granted and Plaintiff appeared before Administrative Law Judge Joel H. Friedman ("ALJ") on June 8, 2010. (R. at 12).

At the time of the hearing, Plaintiff was 47 years old with a ninth grade education and no other vocational training or past relevant work experience. (R. at 15). She had only held temporary jobs, working for minimum wage for no more than two weeks at a time. (R. at 96-98). Her last job, as an assembler in a warehouse, ended in 2007 after two weeks when her employer went out of business; she has not been employed since. (*Id.*). She lived with her mother, and received food stamps, Medicaid, and social service assistance. (R. at 31-32, 93).

Plaintiff was diagnosed with multiple sclerosis ("MS") in 1984[2] and with human immunodeficiency virus ("HIV") in 2008, received treatment for anemia in 2008, and developed trigeminal neuralgia after a tooth extraction in 2009. (R. at 15). In addition, at the hearing, Plaintiff complained of dizziness, headaches, difficulty breathing, nightmares, blurred vision, and pain in her head, mouth, shoulder, and legs. (R. at 15, 35, 43). She has inconsistently alleged that she has not worked for twenty years due to fatigue, dizziness, and lightheadedness and that those same ailments are side effects of the medications she has taken since 2008. (R. at 42-43).

Plaintiff further alleges that she can stand for fifteen minutes or sit for twenty, perform some household chores, and go to the store accompanied by someone. (R. at 15). She has received medication for the symptoms of the trigeminal neuralgia, which Plaintiff stated made the pain stop. (R. at 32). Plaintiff has received anti-viral medication for treatment of her HIV since 2009, and the ALJ concluded, "there is no indication that she has experienced any type of opportunistic infections or complications." (R. at 15). She has been treated for otitis, a cough on

---

[2] Plaintiff stated that there may be a correlation between her trigeminal neuralgia and MS. (*See* R. at 14). However, Plaintiff did not indicate on her application that she applied for SSI because of this diagnosis, nor is it mentioned in the filings for the instant action.

2

one occasion, multiple vaginal infections, and bronchitis. (*Id.*). Plaintiff sees a neurologist for medication which makes her dizzy and gives her blurred vision. (*Id.*).

Plaintiff underwent consultative examinations with state agency doctors. (R. at 48-49, 175, 293). Dr. Aaron submitted a Disability Determination and Transmittal on September 8, 2008, stating that Plaintiff has HIV and anemia. (R. at 48-49). On September 7, 2008, Dr. Rabelo conducted a residual functional capacity ("RFC") evaluation and found that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk about six hours in an eight hour day, sit about six hours in an eight hour day, and could push or pull in an unlimited manner; no other limitations were found in his report and he determined that Plaintiff had an RFC of light work. (R. at 175-182).

On February 20, 2009, Dr. Walsh also conducted an RFC evaluation of Plaintiff and found that she could occasionally lift and/or carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk about six hours in an eight hour day, sit about six hours in an eight hour day, and could push or pull in an unlimited manner. (R. at 294). Plaintiff was also found to have occasional postural limitations in climbing, balancing, stooping, kneeing, crouching, and crawling. (R. at 295). She had no manipulative, visual, communicative, or environmental limitations during the examination, other than needing to avoid exposure to hazards. (R. at 296-97). Dr. Walsh concluded that Plaintiff had a RFC of light work. (R. at 298).

On November 19, 2010, ALJ Friedman determined that Plaintiff had severe impairments from HIV, anemia, and trigeminal neuralgia, which limited Ms. Thomas to the "full range of light work with some restrictions working at heights or around hazardous material." (R. at 14, 153). Despite this, the ALJ denied Plaintiff's Social Security Disability application, finding that she was not "under a disability, as defined in the Social Security Act." (R. at 17).

3

On January 21, 2011, Ms. Thomas filed a Request for Review from the Appeals Council, seeking review of ALJ Friedman's decision. (*See* R. at 153-155). On August 7, 2012, the Appeals Council denied the appeal, concluding that there were no grounds for review, and informed Ms. Thomas that should she disagree with this decision, she may file a civil action. (R. at 1-3). On October 5, 2012, Ms. Thomas commenced the instant action. (*See* D.E. No. 1, Complaint ("Compl.")).

## II. Legal Standard

### A. Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g) (2012). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the Commissioner "must adequately explain his reasons in the record for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1990). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

B.     **Determining Social Security Benefits**

To qualify for Social Security benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381 (2012). "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (2012). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4) (2013).

**C.      Burden of Proof**

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). If she is able to make this showing, then she is presumed disabled. 20 C.F.R. § 416.920(a)(4)(iii). If she cannot show that she meets or exceeds a listed impairment, at step four she must show that her RFC does not permit her to return to her previous work. 20 C.F.R. § 416.920(e)-(f). If the claimant meets this burden, then at step five the burden shifts to the Commissioner to demonstrate that the claimant can make an adjustment to other work. 20 C.F.R. § 415.920(g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

If the Commissioner cannot show that the claimant can make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(i).

**III. Discussion**

On appeal, Plaintiff argues that the Commissioner erred as a matter of law in determining that (1) Plaintiff does not have a severe pulmonary impairment, (2) Plaintiff's impairments did not satisfy Listings 3.02, 7.02, 11.0, and 14.08, (3) Plaintiff has the RFC to perform the full range of light work, and (4) the Commissioner erred in mechanically applying the medical-vocational guidelines ("the grid") without taking vocational evidence into account. (D.E. No. 10, Brief of Plaintiff Janet Thomas ("Pl. Br.") at 11). Plaintiff asks the Court to remand this case to the Commissioner in accordance with 42 U.S.C. § 405(g) with instructions to reassess Plaintiff's RFC, to obtain the services of a vocational expert while reassessing this RFC, and to issue a new decision. (R. at 16). The Court rejects Plaintiff's contentions.

**A. Step Two – Pulmonary Impairment Severity**

Plaintiff argues that her pulmonary impairment was severe, and the ALJ erred by not finding it as such at the second step of the analysis. (Pl. Br. at 11-19). Also, the pulmonary impairment was not considered properly in the subsequent steps of the analysis. (*Id.*). Defendant counters that the ALJ's finding that Plaintiff's pulmonary condition was not severe was supported by substantial evidence because "state agency doctors, Dr. Rabelo and Dr. Walsh, attributed no functional limitations to Plaintiff's pulmonary impairments." (D.E. 12, Brief of Defendant Commissioner of Social Security ("Def. Br.") at 5-7).

As noted above, step two of the disability analysis determines whether a claimant has a "severe medically determinable . . . impairment that meets the duration requirement in § 416.909." 20 C.F.R. § 416.920(a)(4) (2013). Impairments must be established by medical

7

evidence consisting of signs, symptoms, and laboratory findings, not only by claimant's statements. 20 C.F.R. §§ 416.908, 416.928. Impairments are not disabilities unless they last (or could be expected to last) for the duration period—a continuous period of at least twelve months. 20 C.F.R. § 416.909. For an impartment to be severe, it must significantly interfere with basic work activities. 20 C.F.R. § 416.921(a). Basic work activities include functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. §416.921(b). Regarding the severity requirement, the Supreme Court has ruled that this requirement is a *de minimis* test obligating the claimant to show that his impairment is not so slight that it could not interfere with the ability to work. *Bowen v. Yuckert,* 482 U.S. 137 (1987).

Here, the ALJ's finding was supported by substantial evidence and was adequately explained in the record. First, Dr. Rabelo and Dr. Walsh attributed no functional limitations to Plaintiff's pulmonary impairments. (R. at 175-82, 293-300). Thus, there is no showing that there is any interference with basic work activities as required under 20 C.F.R. §416.921(a).

Second, the ALJ's opinion considered Plaintiff's pulmonary function testing, before stating that Plaintiff is not undergoing treatment for respiratory impairment. (R. at 16) ("Pulmonary function testing also showed moderate to severe restriction but the claimant reported that she smoked and there is no indication of treatment for a respiratory impairment."). While Plaintiff argues that the record demonstrates "[P]laintiff was treated with antibiotics and steroids for lung impairment," (Pl. Br. at 18), the record also demonstrates that the pulmonary function test was taken when Plaintiff had an upper respiratory tract infection, and the only treatment Plaintiff received for this ailment was at that time. (*See* R. at 171-172, 174, 204). Thus, it is doubtful that Plaintiff could establish the 12-month durational period, required under 20 C.F.R. § 416.909.

Third, Plaintiff admits she continued smoking after being advised by doctors to quit. "Failure to follow treatment undermines [Plaintiff's] credibility." *Maguigan v. Astrue*, 2010 WL 3081336, at *11 (D. Del Aug. 5, 2010). Fourth, the Court notes that Plaintiff did not allege a pulmonary impairment in her disability application. (R. at 105-06). Lastly, no harm was done to Plaintiff by ALJ not finding her pulmonary impairment severe, as her claim was not denied on this basis, nor at the second step of the analysis.

**B. ALJ's Findings that the Plaintiff Does Not Satisfy the Listings 3.02, 7.02, and 14.08(G)(1) and Application of Listing 11.08**

The Court finds that the ALJ's rulings on whether Plaintiff's impairments, alone or in combination, satisfied Listings 3.02, 7.02, 11.08, and 14.08, were supported by substantial evidence and are accordingly affirmed.

Plaintiff essentially argues that the ALJ's step three analysis is not specific enough. (Pl. Br. 19-24). For step three of the disability analysis, the ALJ is required to compare the combined effect of all Plaintiff's impairments with one or more of the Commissioner's Listings or determine if the Plaintiff's impairment is medically equivalent to one of the Listings. 20 CFR 404.1526(a); *see also Torres v. Commissioner*, 279 F. App'x. 149 (3d Cir 2008). A claimant must satisfy all of the specified criteria of a listing in order to show that an impairment matches a listing or that an unlisted impairment is equivalent to a listed impairment. *Sullican v. Zebley*, 493 U.S. 521, 530-31 (1990).

    **i.    Listing 3.02**

As determined above, the ALJ's decision that Plaintiff did not have a severe pulmonary impairment was based on substantial evidence. Additionally, Plaintiff's pulmonary impairment did not satisfy Listing 3.02, which requires a claimant to demonstrate the following:

> (A.) Chronic obstructive pulmonary disease due to any cause, with FEV 1 equal to or less than the values specified in Table I…or (B.) Chronic restrictive ventilator disease, due to any cause, with the FVC equal to or less than the values specified in Table II…or (C.) chronic impairment of gas exchange due to clinically documented pulmonary disease, with single breath DLCO less than 10.5 ml/min/mm Hg or less than 40 percent of the predicted normal value…or arterial blood gas values of PO2 and simultaneously determined PCO2 measured while at rest…in a clinically stable condition on at least two occasions, three or more weeks apart within a 6-month period, equal to or less than the values specified in Table II A, or II B, or III C.

20 CF.R. § 404 App. 1, Listing 3.02; (*See* Def. Br. 7-8). For someone of Plaintiff's height, 67 inches[3], Tables I and II require an FEV 1 of no more than 1.35 and an FVC of no more than 1.55 in order for a claimant to meet either Listing 3.02(A) or (B). *See* 20 C.F.R. § 404 App. 1, Listing 3.02. However, the Record provides that Plaintiff had an FEV 1 range of 1.47 and 1.53 and an FVC range of 1.62 and 1.69, (R. at 174), which are both higher than the maximums to satisfy Listing 3.02(A) or (B).

Listing 3.02(C) requires multiple tests but Plaintiff has only cited a single test, (R. at 174), so the record does not demonstrate that Plaintiff can meet Listing 3.02(C). Thus, the record fails to demonstrate that Plaintiff meets Listing 3.02 and the ALJ's decision on this issue is upheld because it was supported by substantial evidence.

Finally, the Court notes that Plaintiff repeatedly argues that her pulmonary impairment is "near-listing level," (Pl. Br. at 22), but Plaintiff provides no legal or medical citation evidence in support.

### ii. Listing 7.02

Plaintiff's impairment does not satisfy Listing 7.02, as a claimant must show "[c]hronic anemia (hematocrit persisting at 30 percent or less due to any cause) [w]ith: (A.) Requirement of one or more blood transfusions on an average of at least once every 2 months; or (B.)

---

[3] (R. at 172).

[e]valuation of the resulting impairment under criteria for the affected body system." 20 C.F.R. § 404 App. 1. Plaintiff concedes that the record does not demonstrate that her hematocrit was ever recorded below 30. (Pl. Br. at 22). Plaintiff's hematocrit levels remained above 30 and nothing in the record suggests that the Plaintiff underwent a blood transfusion at any time. (Def. Br. 7-8; *See also* R. at 216, 221, 234, 253, 278, 285, 331, 337, 348, 358, 363).

### iii. Listing 11.08

Plaintiff alleges that the ALJ misapplied Listing 11.08 because Listing 11.08 does not apply to the conditions Plaintiff exhibits. (Pl. Br. 23). Plaintiff would like the Court to find that the allegedly irrelevant Listing 11.08 analysis renders the ALJ's step three analysis deficient. However, Plaintiff has not carried its burden in demonstrating prejudice resulting from the ALJ's mention of Listing 11.08 in the ALJ decision. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted") (internal quotations omitted). The Court does not find that Plaintiff was prejudiced by the ALJ comparing Plaintiff's claim to an *additional* Listing.

Further, the Court can analyze the ALJ's decision as a whole to determine whether there is sufficient development of the record and explanation of findings to permit meaningful review. *Jones v. Barnhart*, 364 F.3d 501, 504-05 (3d Cir. 2004). The ALJ's decision meets this standard.

### iv. Listing 14.08(G)(1)

Plaintiff claims that the ALJ overlooked Listing 14.08(G)(1), a listing allegedly describing HIV and anemia. (Pl. Br. at 23). However, Defendant is correct that 14.08(G)(1) is no longer an impairment listed in the CFR appendix list of impairments and thus the ALJ did not err. (Def. Br. at 9). Here, the ALJ provided a thorough discussion of the record, as it pertains to

Plaintiff's HIV symptoms, particularly in the RFC section of the opinion. (R. at 15-17). Thus, the ALJ's step three analysis as to Listing 14.08 was supported by substantial evidence and is thus affirmed.

For the foregoing reasons, the Court holds that the ALJ's step three Listings findings are supported by substantial evidence and adequately explained. Thus, all the ALJ's Listings findings are affirmed.

## C. ALJ's Finding that Plaintiff has the RFC to Perform the Full Range of Light Work

Plaintiff argues that the Commissioner erred as a matter of law in determining that Plaintiff had the RFC to perform the full range of light work. (Pl. Br. 31-35). Defendant argues that the ALJ properly considered Plaintiff's medical record and consultative examinations, as the "state agency doctors are medical experts, and the ALJ is free to give their opinion weight if, as here, evidence supports them." (Def. Br. 10-11) (citations omitted). The Court finds that the ALJ correctly found that Plaintiff has the RFC to perform the full range of light work.

### i. *Burnett* Standard

In determining the claimant's RFC, if the ALJ decides to "reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review." *Harris v. Comm'r of Soc. Sec.*, No. 11-2961, 2012 U.S. Dist. LEXIS 140308, at *19 (D.N.J. Sept. 27, 2012) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000)). If there is contradictory evidence, "the ALJ must resolve the discrepancy and provide a full explanation to support that resolution." (*Id.*) (citing *Burnett*, 220 F.3d at 121-22).

In his decision, the ALJ recited that Plaintiff testified that she has the following symptoms: pain on the side of her head, bad pain in her mouth, headaches, vaginal infections, dizziness, blurred vision, and leg pain. (R. at 15). Then, the ALJ found that claimant's

statements regarding "the intensity, persistence and limiting effects of these symptoms are not credible." (R. at 16). The ALJ supported his finding by explaining, that regarding Plaintiff's HIV, the record demonstrates that Plaintiff has not experienced "opportunistic infections" from her HIV and that her medical treatment was for "miscellaneous complaints . . .medication refills [,] . . . blood tests [,] . . . otitis in her ear and cough [,] . . . [and one emergency room visit] for dizziness, weakness, cough and headache [which] was diagnosed [as] bronchitis and treated with a course of antibiotics." (R. at 16; *see e.g.* R. at 262; 263-71; 314-317). The ALJ's analysis gives sufficient indication for why he rejected some medical evidence: in the ALJ's judgment, "the submitted records show that the claimant has not experienced any significant manifestations of HIV." (R. at 16).

The ALJ then also specifically referenced the medical treatment related to Plaintiff's anemia, finding a normal EKG. (R. at 16). The ALJ further detailed Plaintiff's treatment for her trigeminal neuralgia, explaining that some of her medical records indicated "normal." (R. at 16). Meanwhile, other evidence such as a brain MRI indicated that Plaintiff suffers from impairments. (*Id.*). However, the ALJ provided a reason for rejecting such evidence: he didn't find Plaintiff's testimony about the intensity of her pain arising from the condition demonstrated by evidence like the MRI to be credible. (R. at 16). The ALJ further credited Dr. Walsh's statement that Plaintiff could do the full range of light work. (R. at 17). Thus, the Court finds that the ALJ's RFC determination was sufficient in light of *Burnett*.

### ii. Light Work

Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

> pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

Based on Dr. Walsh's and Dr. Rabelo's consultative evaluations, the ALJ noted that Plaintiff had the ability to lift twenty pounds occasionally, and ten pounds frequently. (R. at 15, 294). The ability to perform the full range of light work requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. (*Id.*). The ALJ noted that, according to Dr. Walsh's evaluation, Plaintiff could sit, stand, and walk for six hours total in an eight-hour day. (*Id.*). Light work only requires sitting for a total of six hours and standing and walking for a total of two hours of an eight-hour workday.

Because the record demonstrates that medical providers stated that Plaintiff could do light work and the ALJ credited this testimony, the ALJ's RFC determination is based on substantial evidence and accordingly affirmed.

### D. ALJ Findings that Plaintiff Could Perform Other Work

Plaintiff argues that she has both exertional and nonexertional impairments, and that since the ALJ did not take vocational evidence from a vocational expert, the ALJ (1) must use specific citations to the Social Security Ruling in his decision in order to demonstrate that the facts of the instant case are within the scope of the Social Security Ruling; and (2) must provide notice of his intent to utilize a Social Security Ruling in lieu of a vocational expert. (Pl. Br. 30-31). Defendant argues that the ALJ properly found that Plaintiff could perform the full range of light work and that a vocational expert was not needed. (Def. Br. 13-14).

### i. **Use of Social Security Rulings Rather Than Vocational Expert**

"When a claimant . . . has nonexertional limitations . . . the ALJ must reference additional evidence [beyond the Medical-Vocational Guidelines] when determining if those limitations erode the claimant's occupational base. Such evidence can be a Social Security Ruling as long as it is *crystal-clear that the SSR is probative* as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Breslin v. Commissioner of Social Sec.*, 509 F. App'x 149, 154 (3d Cir. 2013) (emphasis added).

Here, the Social Security Rulings cited by the ALJ explicitly state the light work occupational base is not eroded by Plaintiff's nonextertional impairments. *See* SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983) ("most light jobs . . . require a person to be standing or walking most of the workday . . . [and] frequent lifting or carrying of objects weighing up to 10 pounds . . . implies that the worker is able to do occasional bending of the stooping type."). Dr. Walsh reported that Plaintiff is capable of frequently lifting or carrying objects weighing up to 10 pounds. (R. at 294). The ALJ specifically stated that "only occasional postural activities are required in light work," (R. at 17), and Dr. Walsh found that Plaintiff could engage in all postural activities "occasionally" except climbing "ladder/rope/scaffolds," (R. at 295).

Dr. Walsh's report, stating that Plaintiff could never climb a "ladder/rope/scaffolds," (R. at 295), conforms to SSR 83-14 ("There are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles, and ropes."). SSR 83-14, 1983 WL 31254, at *5 (Jan. 1, 1983).

Dr. Walsh finally reported that Plaintiff must avoid all exposure to "Hazards," including machinery and heights. (R. at 297). "Surroundings which an individual may need to avoid because of impairment include . . . recognized hazards such as unprotected elevations and

dangerous moving machinery . . . . [Such a person] is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15, 1985 WL 56857, at *8 (Jan. 1, 1985).

As demonstrated above, Plaintiff's limitations are specifically mentioned in the SSRs and thus it is "crystal clear that the SSR[s] [are] probative," *Allen,* 417 F. 3d at 320, as to the finding that Plaintiff's nonexertional impairments have very little or no effect on her unskilled light occupational base.

The ALJ cites to Medical Vocational Rule 202.17, which provides that an individual with Plaintiff's age, education, and work experience with an RFC for light work is not disabled, and further relies on SSRs 83-14 and 85-15 to determine that Plaintiff is not disabled. (R. at 17). While the ALJ did not use a vocational expert to make its determination, the ALJ's reliance on the SSR in combination with the Medical-Vocational Guidelines is allowed. Thus, this Court is satisfied that the ALJ's determination of other work was proper and supported by substantial evidence.

    ii.    **Notice Prior to Use of Social Security Ruling**

When an ALJ does not provide advance notice to a Plaintiff before using a Social Security Ruling in lieu of a vocational expert, "it [is] appropriate to give close scrutiny to the ALJ's reliance on a [Social Security] Ruling." *Allen v. Barnhart*, 417 F.3d 396, 408 (3d Cir. 2005); *see also Breslin v. Comm'r of Soc. Sec*., 509 F. App'x 149, 155 (3d Cir. 2013) (finding that prior notice was not required where the ALJ relied on a SSR that directly applied to Breslin's nonexertional impairments).

Here, as detailed above in Sec. (III)(D)(i), the ALJ's use of the Social Security Ruling was proper, even after close scrutiny.

**IV.	Conclusion**

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and DENIES Plaintiff's appeal.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**
